**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

RONALD ROSS,
*Petitioner-Appellant*,

v.

WILLIAMS, Warden; ATTORNEY
GENERAL FOR THE STATE OF
NEVADA,
*Respondents-Appellees.*

No. 16-16533

D.C. No.
2:14-cv-01527-
JCM-PAL

OPINION

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted En Banc June 19, 2019
San Francisco, California

Filed February 24, 2020

Before: Sidney R. Thomas, Chief Judge, and William A.
Fletcher, Ronald M. Gould, Richard A. Paez, Marsha S.
Berzon, Consuelo M. Callahan, Milan D. Smith, Jr., Sandra
S. Ikuta, Jacqueline H. Nguyen, Paul J. Watford and
Michelle T. Friedland, Circuit Judges.

Opinion by Judge Friedland;
Dissent by Judge Ikuta

## SUMMARY[*]

### Habeas Corpus

The en banc court reversed the district court's judgment dismissing as untimely Ronald Ross's amended habeas corpus petition challenging his Nevada state conviction for theft-related offenses, and remanded.

Proceeding *pro se*, Ross timely filed a habeas petition in the district court. Using a court-provided form, he asserted eight claims of ineffective assistance of counsel. He also attached an order from the Nevada Supreme Court affirming the denial of his state petition for postconviction relief. After AEDPA's one-year statute of limitations had expired, Ross filed with counsel's assistance an amended petition that included multiple claims, some of which resembled those identified in Ross's original *pro se* federal petition and discussed in the attached state court order. Dismissing the amended petition as untimely, the district court rejected Ross's argument that its claims related back to the original, timely petition.

Explaining that Federal Rules of Civil Procedure 15(c)(1)(B) and 10(c) apply in habeas proceedings, the en banc court held that if a petitioner attempts to set out habeas claims by identifying specific grounds for relief in an original petition and attaching a court decision that provides greater detail about the facts supporting those claims, that petition can support an amended petition's relation back. The en banc court held that the exhibit containing the

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Nevada Supreme Court order was a part of the original petition for all purposes under Rule 10(c), and that the original petition therefore set out or attempted to set out conduct, transactions, or occurrences to which claims in the amended petition could relate back under Rule 15(c)(1)(B).

The en banc court wrote that the central question is whether the amended and original petitions share a common core of operative facts, as those facts are laid out in the amended petition and "attempted to be set out" in the original petition; and that if an exhibit to the original petition includes facts unrelated to the grounds for relief asserted in that petition, those facts were not "attempted to be set out" in that petition and cannot form a basis for relation back. Applying this framework, the en banc court wrote that Ross's amended petition and his original petition with the attached exhibit share a common core of operative facts— for example, defense counsel's purported failure to object to the state witness's distraction theft testimony —such that the amended petition relates back.

The en banc court rejected arguments (1) that the Nevada Supreme Court order is not a "written instrument" within the meaning of Rule 10(c) so it should not be considered part of Ross's petition and cannot provide facts to which the amended petition could relate back, and (2) that a petition can only incorporate an attachment by clearly and repeatedly referencing it. The en banc court wrote that a petition need not be pleaded with sufficient particularity to support relation back. Observing that Habeas Rule 2(c)'s particularity requirement applies to pleading, the en banc court explained that the requirements of relation back are explicitly more generous. The en banc court saw no basis to conclude that, in general, allowing a petitioner to incorporate facts from attachments into his petition for relation back

purposes will saddle district courts with a greater volume of documents to review than the Habeas Rules expressly contemplate.

The en banc court remanded for the district court to consider which of the claims in the amended petition (beyond the claim regarding the failure to object to expert testimony) are supported by facts in the original petition.

Judge Ikuta, joined by Judges Callahan and M. Smith, dissented. She wrote that the majority's interpretation of Rule 10(c) in the habeas context—to mean that the facts contained in "a written instrument that is an exhibit to a" habeas petition are "part of the pleading for all purposes" but only to the extent the facts are arguably related to the petition's grounds for relief—is unworkably broad and complex, inconsistent with the Habeas Rules, AEDPA's statute of limitations, and the Supreme Court's guidance on applying Rule 10(c) in this context.

**COUNSEL**

Jonathan M. Kirshbaum (argued), Assistant Federal Public Defender; Rene L. Valladares, Federal Public Defender; Office of the Federal Public Defender, Las Vegas, Nevada; for Petitioner-Appellant.

Jeffrey M. Conner (argued), Assistant Solicitor General; Matthew S. Johnson, Deputy Attorney General; Adam Paul Laxalt, Attorney General; Office of the Attorney General, Carson City, Nevada; for Respondents-Appellees.

David M. Porter, Chair, NADCL Amicus Committee, Sacramento, California; Gabriel J. Chin, University of California, Davis School of Law, Davis, California; for Amici Curiae National Association of Criminal Defense Lawyers and Aoki Center for Critical Race and Nation Studies.

## OPINION

FRIEDLAND, Circuit Judge:

Ronald Ross, proceeding *pro se*, timely filed a habeas petition in the United States District Court for the District of Nevada.  Using a court-provided form for habeas petitions, he asserted eight claims of ineffective assistance of counsel based on specific alleged deficiencies in his trial counsel's performance.   Ross's statements on the form petition contained a short description of each claim.   Ross also attached a six-page order from the Nevada Supreme Court affirming the denial of his state petition for postconviction relief.   That order summarized the factual basis for most of the claims Ross had raised in his state petition, many of which were the same as those raised in his federal petition.

The district court appointed Ross counsel.  Some months later, after the one-year statute of limitations under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d)(1), had expired, Ross filed an amended petition with counsel's assistance.   The amended petition included multiple claims, some of which resembled those that were identified in Ross's original *pro se* federal petition and discussed in the attached state court order.  The district court dismissed Ross's amended petition as untimely, rejecting Ross's argument that its claims related back to his original, timely petition.

A divided three-judge panel affirmed the district court's dismissal.  *Ross v. Williams*, 896 F.3d 958, 972–73 (9th Cir. 2018).   We granted rehearing en banc, *Ross v. Williams*, 920 F.3d 1222, 1223 (9th Cir. 2019), and now reverse.

# I

Following his conviction for several theft-related offenses in Nevada state court, Ronald Ross was sentenced under Nevada's habitual offender statute to life in prison with a possibility of parole after twenty years. Ross appealed, and the Nevada Supreme Court affirmed his conviction and sentence on November 8, 2010. Ross did not file a petition for a writ of certiorari with the United States Supreme Court.

On November 30, 2011, Ross petitioned for postconviction relief in Nevada state district court, asserting among other things various claims of ineffective assistance of trial counsel. That court denied relief.

The Nevada Supreme Court affirmed on July 22, 2014, explaining its decision in a six-page written order. That order enumerated Ross's claims that his trial counsel was ineffective for:

> (A) "failing to engage in pretrial discovery," which would have enabled counsel to obtain a surveillance video;
>
> (B) "violating [Ross's] right to a speedy trial";
>
> (C) allowing "a communication breakdown [that] prevented [Ross] from being able to assist counsel in the preparation of his defense";

(D)     "failing to object to expert testimony pertaining to pickpockets and distraction thefts";

(E)     "failing to retain a defense expert to rebut the expert testimony" about pickpockets and distraction thefts;

(F)     "failing to properly challenge the use of a preliminary-hearing transcript in lieu of live testimony" or to "mak[e] an offer of proof as to what additional questions counsel would have posed to a live trial witness";

(G)     "failing to renew at trial [Ross's] preliminary-hearing objection" concerning testimony about a surveillance video on the grounds that the testimony "violat[ed] the best evidence rule"; and

(H)     "failing to raise certain objections during the State's closing arguments and at sentencing and . . . failing to move post-verdict to dismiss the case for lack of evidence."[1]

---

[1] For ease of reference, we have adopted different labeling systems to identify the claims in each of the documents at issue. We denote claims addressed in the Nevada Supreme Court postconviction order as Claims A–H, claims included in the original federal petition as Claims 1–8, and claims included in the amended federal petition as Claims I–XI.

In the course of rejecting those claims, the order discussed the facts underlying most of them.

On September 14, 2014, Ross filed a *pro se* federal habeas petition in the District of Nevada using the district's standard petition form. In relevant part, Ross listed his Sixth Amendment right to counsel as the constitutional basis for his claims. Where the form inquired about the facts on which he based those claims, Ross provided a list of alleged deficiencies in his trial counsel's performance. The list stated that trial counsel (1) "failed to secure a speedy trial"; (2) "failed to review evidence prior to trial and adequately prepare"; (3) "failed to file pretrial motions"; (4) "failed to address the prejudice of evidence lost prior to trial"; (5) "failed to prepare for . . . jury selection" because counsel "attempted to force a deal"; (6) "failed to prepare for . . . trial," again because counsel "attempted to force a deal"; (7) "failed to retain defense experts for . . . trial"; and (8) "failed to object to the State's use of [an] expert witness."

Although Ross did not include any further facts on the petition form, he appended an affidavit stating, among other things, that the Nevada Supreme Court had affirmed the denial of his state postconviction relief petition. The affidavit included a notation to "see attached order." Ross then attached that order as exhibit "A." On the same day, he also filed a handwritten "request" in which he asked the court to provisionally file the petition, give him leave to amend, and appoint counsel. The request stated that "Petitioner incorporates by reference and fact, the attached Affidavit in support of this motion, and writ, with attached exhibits."

The district court reviewed the petition and appointed counsel to assist Ross. It set a deadline for the filing of any amended petition and stated that no response by the State

would be required absent further court order. Following extensions of this filing deadline and with the assistance of newly appointed counsel, Ross filed an amended habeas petition on June 8, 2015, asserting eleven claims. Eight were claims for ineffective assistance of counsel, alleging that Ross's trial counsel: (I) failed to protect Ross's right to a speedy trial; (II) failed to communicate with Ross prior to trial; (III) failed to seek an appropriate sanction based on a discovery violation; (IV) failed to object based on the best evidence rule; (V) failed to object to expert testimony; (VI) failed to call a defense expert; (VII) failed to object to the admission of preliminary hearing testimony based on the State's inability to establish the witness's unavailability; and (VIII) failed to raise mitigating arguments at sentencing against the imposition of a habitual offender sentence. The remainder alleged: (IX) violation of the Confrontation Clause; (X) violation of the right to a speedy trial; and (XI) deprivation of due process based on legally insufficient evidence.

The district court reviewed the amended petition and directed the State to file a response. The State moved to dismiss, arguing in relevant part that the amended petition was untimely. The State highlighted that the amended petition was filed after AEDPA's one-year statute of limitations had run, and the State contended that the amended petition's claims did not relate back to Ross's concededly timely original federal petition because the original petition lacked factual allegations. Ross opposed dismissal, arguing that his amended petition related back because the Nevada Supreme Court order he had attached to his original federal petition included the necessary facts. The district court granted the State's motion and entered an order of dismissal. The court reasoned that Ross had included no facts in his original form petition and had not

referred to the attached state court order sufficiently for the facts therein to be considered incorporated by reference, so there was nothing to which the amended petition could relate back.

Ross timely appealed.

## II

As relevant to this case, AEDPA requires that an individual seeking habeas relief from a state criminal judgment file a petition in federal court within one year of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). This statute of limitations is tolled during the pendency of state postconviction proceedings. 28 U.S.C. § 2244(d)(2). As the parties agree, Ross's September 14, 2014 original petition fell within the limitations period, while his June 8, 2015 amended petition did not.[2] The claims raised in the amended petition are therefore untimely unless they relate back to Ross's original petition.

Under Rule 15(c)(1)(B) of the Federal Rules of Civil Procedure, an otherwise untimely amended pleading "relates back to the date of the original pleading when . . . the

---

[2] Ross's limitations period began to run on February 7, 2011, the deadline for him to seek United States Supreme Court review of the Nevada Supreme Court's decision affirming his judgment of conviction. The limitations period then ran for 296 days. It was tolled from November 30, 2011 to August 18, 2014 during the pendency of Ross's state postconviction proceedings. When those proceedings concluded, the limitations period began to run again. Because 296 of the 365 days to file had already passed, the AEDPA deadline was the first business day that was at least 69 days later: October 27, 2014.

amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Federal Rule of Civil Procedure 10(c) provides that "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion" and that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."

Relying on these rules, Ross argues that the exhibit containing the Nevada Supreme Court order was "a part of [his original petition] for all purposes," and that the original petition therefore "set out" or "attempted to . . . set out" conduct, transactions, or occurrences to which claims in his amended petition could relate back. Fed. R. Civ. P. 10(c); Fed. R. Civ. P. 15(c)(1)(B). We agree.

## A

Federal Rules of Civil Procedure 15(c)(1)(B) and 10(c) apply in habeas proceedings. Under provisions of both the Federal Rules of Civil Procedure and the Rules Governing Section 2254 Cases in the United States District Courts (the "Habeas Rules"), the Federal Rules of Civil Procedure apply to habeas proceedings to the extent they are consistent with the Habeas Rules, federal statutory provisions, and habeas practice. *See* Fed. R. Civ. P. 81(a)(4); Habeas R. 12. An additional statutory provision specifically incorporates Federal Rule of Civil Procedure 15 into habeas procedure. *See* 28 U.S.C. § 2242 ("[An] [a]pplication for a writ of habeas corpus . . . . may be amended or supplemented as provided in the rules of procedure applicable to civil actions."). We refer to Federal Rule of Civil Procedure 81(a)(4), Habeas Rule 12, and Section 2242 collectively herein as the "Habeas Incorporation Provisions."

Relying on the Habeas Incorporation Provisions, the Supreme Court has applied both Rule 15(c) and Rule 10(c) to habeas proceedings. In *Mayle v. Felix*, 545 U.S. 644 (2005), the Supreme Court considered whether an amended habeas petition related back to an original petition under Rule 15(c).**[3]** *Id.* at 649, 656–64. In applying Rule 15(c) in habeas cases, some courts of appeals had treated an entire trial, conviction, or sentence as a "transaction" or "occurrence" to which an amended petition could relate back. *See id.* at 653–54, 656–57. The Court explained that this approach misinterpreted Rule 15(c): An amended petition "does not relate back . . . when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.* at 650. Instead, the Court held, both petitions must "state claims that are tied to a common core of operative facts." *Id.* at 664.

In *Dye v. Hofbauer*, 546 U.S. 1 (2005) (per curiam), the Supreme Court held that, under Rule 10(c), a habeas petitioner could rely on a brief appended to his petition to plead his petition with sufficient particularity. *Id.* at 4. The habeas petition at issue asserted a claim of prosecutorial misconduct. *See id.* at 2–3. In support, the petitioner attached a brief to his habeas petition, which articulated that claim in more detail. *See id.* at 3–4. The petition made repeated references to the brief. *Id.* at 4. The Supreme Court treated the brief as part of the petition under Rule 10(c), and

---

**[3]** *Mayle* relied on then-applicable provisions of the Habeas Rules and Federal Rules of Civil Procedure. *See* Habeas R. 11 (2004); Fed. R. Civ. P. 81(a)(2) (2004); Fed. R. Civ. P. 15(c)(2) (2004). Although these provisions have since been renumbered and in some instances revised, they remain identical or functionally equivalent to the provisions on which *Mayle* relied. *See* Fed. R. Civ. P. 81(a)(4); Habeas R. 12; Fed. R. Civ. P. 15(c)(1)(B).

accordingly deemed the petition to properly present the prosecutorial misconduct claim regardless of whether, without the attachment, the petition might have been construed as presenting the claim "in too vague and general a form." *Id.*

## B

The foregoing authorities make plain that relation back is available under the circumstances presented here. If a petitioner attempts to set out habeas claims by identifying specific grounds for relief in an original petition and attaching a court decision that provides greater detail about the facts supporting those claims, that petition can support an amended petition's relation back.[4] An amended petition relates back if it asserts one or more claims that arise out of "the conduct, transaction, or occurrence" that the original petition "set out" or "attempted to . . . set out"—in other words, if the two petitions rely on a common core of operative facts. Fed. R. Civ. P. 15(c)(1)(B); *Mayle*, 545 U.S. at 657, 664. "[F]or all purposes," including relation back, the original petition consists of the petition itself and any "written instrument[s]" that are exhibits to the petition. Fed. R. Civ. P. 10(c); *see also Dye*, 546 U.S. at 4. Like a brief, a court decision is a written instrument. *See Dye*, 546 U.S. at 4.

---

[4] Because that rule resolves this case, we do not consider whether the original petition, without reliance on the attached Nevada Supreme Court order, included enough factual content to support the relation back of some of the claims later asserted in the amended petition. *See infra* n.9.

**1**

We follow two steps to determine whether an amended petition relates back to an original petition that relied on an appended written instrument to help set forth the facts on which it based its claims.  First, we determine what claims the amended petition alleges and what core facts underlie those claims.   Second, for each claim in the amended petition, we look to the body of the original petition and its exhibits to see whether the original petition "set out" or "attempted to . . . set out" a corresponding factual episode, *see* Fed. R. Civ. P. 15(c)(1)(B)—or whether the claim is instead "supported by facts that differ in both time and type from those the original pleading set forth," *Mayle*, 545 U.S. at 650, 664.  At a minimum, the original petition "attempted to . . . set out" all facts that supported a ground for relief asserted in the original petition.  Those facts therefore could provide the necessary correspondence for relation back.  *Cf. id.* at 659–60 (explaining that an amendment that "invoked a legal theory not suggested by the original complaint" could relate back to the original complaint because it arose out of the same "episode-in-suit" (citing *Tiller v. Atl. Coast Line R. Co.*, 323 U.S. 574, 580–81 (1945))[5]).

In comparing the petitions' sets of facts, we do not require that the facts in the original and amended petitions be stated in the same level of detail.  Relation back may be appropriate if the later pleading "merely correct[s] technical deficiencies or expand[s] or modif[ies] the facts alleged in the earlier pleading," "restate[s] the original claim with

---

[5] "Episode-in-suit" refers to the incident that gave rise to a lawsuit. In *Tiller*, the episode-in-suit was "a worker's death attributed . . . to the railroad's failure to provide its employee with a reasonably safe place to work."  *Mayle*, 545 U.S. at 660.

greater particularity," or "amplif[ies] the details of the transaction alleged in the preceding pleading." 6A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1497 (3d ed. 2019). Sufficient correspondence exists if the two claims arise out of the same episode-in-suit. *See, e.g.*, *Mayle*, 545 U.S. at 664 n.7 (approving relation back when "the original petition challenged the trial court's admission of recanted statements, while the amended petition challenged the court's refusal to allow the defendant to show that the statements had been recanted" (citing *Woodward v. Williams*, 263 F.3d 1135, 1142 (10th Cir. 2001)); *Nguyen v. Curry*, 736 F.3d 1287, 1296–97 (9th Cir. 2013) (determining that a claim that appellate counsel was ineffective for failing to raise double jeopardy related back to a timely raised substantive double jeopardy claim), *abrogated on other grounds by Davila v. Davis*, 137 S. Ct. 2058 (2017).

The central question under this framework is whether the amended and original petitions share a common core of operative facts, as those facts are laid out in the amended petition and "attempted to be set out" in the original petition. If an exhibit to the original petition includes facts unrelated to the grounds for relief asserted in that petition, those facts were not "attempted to be set out" in that petition and cannot form a basis for relation back.

Applying this framework here, Ross's original form petition and attached exhibit contain core facts to which claims in his amended petition relate back. An obvious example is Claim V of Ross's amended federal petition, which asserts that Ross's trial counsel was ineffective for failing to object when the State failed to "provide any notice that [it] intended to present expert testimony" from the State's witness about what "distract theft[s]" were. In his

original form petition, Ross listed as Claim 8 the similar contention that "counsel . . . failed to object to the State's use of [an] expert witness."   The attached Nevada Supreme Court postconviction order provided factual details related to this claim.   In its discussion of Claim D, that order evaluated Ross's argument that his "counsel was ineffective for failing to object to expert testimony pertaining to pickpockets and distraction thefts where the [State's] witness was not noticed as an expert."   Comparing the claims' operative facts clearly reveals a common core— defense counsel's purported failure to object to the state witness's distraction theft testimony—that was present in the original petition and to which the amended petition relates back.[6]

## 2

None of the State's or the dissent's counterarguments is persuasive.   The State argues that the Nevada Supreme Court's order is not a "written instrument" within the meaning of Rule 10(c), so it should not be considered part of Ross's petition and cannot provide facts to which the amended petition could relate back.   But Rule 10(c) does not define "written instrument," and, especially in the habeas context, there is no reason to believe—as the State contends—that the term was intended to be limited to private written agreements such as contracts, leases, or wills.   *See* Habeas R. 4 advisory committee's note to 1976 adoption (consideration of habeas petition "may properly encompass

---

[6] As explained below, *see infra* Part III, we remand for the district court to consider which of the remaining claims in the amended petition are supported by facts in the original petition.   We emphasize that the correspondence need not be as precise as the correspondence in the expert testimony claim for there to be relation back.   *See Nguyen*, 736 F.3d at 1296–97.

any exhibits attached to the petition, including, but not limited to, transcripts, sentencing records, *and copies of state court opinions*" (emphasis added)).  Indeed, *Dye* instructs that a legal brief counts as a written instrument within the meaning of Rule 10(c).  *See* 546 U.S. at 4.**[7]**  We need not articulate a comprehensive definition of "written instrument," because, whatever the boundaries of the definition, if it includes a brief it must include formal judicial decisions.

The State contends, however, that even if the Nevada Supreme Court's order is a written instrument within the meaning of Rule 10(c), *Dye* imposes a requirement that a petition can only incorporate an attachment by "clear[ly] and repeated[ly]" referencing it—which the State argues Ross did not do.  *See Dye*, 546 U.S. at 4.  But neither the Habeas Incorporation Provisions nor any other governing law erects this hurdle to petitioners' pursuit of habeas relief.  *Dye* treated an appended supporting brief as part of a habeas petition pursuant to Rule 10(c), without making a distinction between habeas petitions and other civil actions for purposes

---

**[7]** *Dye* did not specify whether it relied on the portion of Rule 10(c) providing that a "written instrument that is an exhibit to a pleading is a part of the pleading for all purposes," the portion of Rule 10(c) providing that "statement[s] in a pleading" may be "adopted by reference elsewhere in the same pleading or in any other pleading or motion," or both.  Fed. R. Civ. P. 10(c).  For two reasons, we understand the Court to have relied at least on the "written instrument" provision.  First, the Court described the brief as *appended* to the petition, which is best understood as a reference to the portion of Rule 10(c) about exhibits.  Second, it is unlikely that the Supreme Court considered the brief in itself to be "a pleading" within the meaning of the other portion of Rule 10(c).  *See* Fed. R. Civ. P. 7(a) (defining types of pleadings that may be filed in federal court, and not listing briefs); *Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 345 (9th Cir. 1996) (distinguishing between a pleading and a brief).

of the incorporation of attachments. *See id.* (citing one of the Habeas Incorporation Provisions, then-Rule 81(a)(2), to support application of Rule 10(c)). The Court mentioned that the petition made "clear and repeated references" to the brief, *id.* at 4, but that does not mean that it was *necessary* for the petition to do so in order for that attachment to be a part of the petition. To the extent the Court relied on the "clear and repeated references" to the brief at all, it would have been because the issue in *Dye* was about whether the petition was pleaded with sufficient particularity, not about relation back.[8]

In fact, a petition need not be pleaded with sufficient particularity to support relation back. Arguing otherwise, the State contends that Habeas Rule 2(c), which requires that habeas petitions "specify all the grounds for relief available" to a petitioner and "state the facts supporting each ground," cabins relation back by precluding the consideration of any matter outside the four corners of the petition. Similarly, the dissent suggests that the purported conflict between Rule 10(c) and Habeas Rule 2 indicates that we should preclude courts from examining exhibits for relation back purposes unless the exhibits have been clearly and repeatedly incorporated by reference. Dissent at 38–40, 47 & n.6. We cannot agree with either approach for the simple reason that Rule 2(c) sets forth only a pleading requirement. The requirements for relation back are different—and explicitly more generous. Rule 15(c)(1)(B) allows relation back to an occurrence that was only "*attempted* to be set out"

---

[8] Like the State, the dissent insists that *Dye* formulated a habeas-specific rule that an exhibit is incorporated only when the petition makes "clear . . . reference[]" to it. Dissent at 47 (alteration in original). Yet the dissent offers no explanation of why our contrary reading of *Dye* is incorrect.

in the original pleading, which necessarily contemplates that the original pleading may be inadequately pleaded yet still support relation back. Fed. R. Civ. P. 15(c)(1)(B) (emphasis added); *see also, e.g.*, *Dean v. United States*, 278 F.3d 1218, 1222 (11th Cir. 2002) (per curiam) (concluding that claims in an amended habeas petition could relate back to claims in an original petition that expressly omitted supporting facts if the claims arose out of the same specific conduct or occurrence);[9] *McClellon v. Lone Star Gas Co.*, 66 F.3d 98, 102 (5th Cir. 1995) (allowing relation back to original complaint that "obviously did not conform with the pleading requirements of [R]ule 8"). Indeed, a key purpose of Rule 15 is to permit pleading deficiencies to be fixed through amendment. *See* Wright & Miller § 1497.[10]

---

[9] The Eleventh Circuit in *Dean* adopted an even more permissive approach to relation back than Ross advocates for—or than we need consider—here. In *Dean*, the original petition included a claim objecting to perjured testimony at trial for which the petitioner provided no factual support at all, indicating that he intended to file "all facts in support thereof" at a later time. *Id.* at 1221–22. The Eleventh Circuit held that this claim, among others, provided a basis for the amended petition to relate back. *See id.* at 1222. The court explained: "When the nature of the amended claim supports specifically the original claim, the facts there alleged implicate the original claim, even if the original claim contained insufficient facts to support it. One purpose of an amended claim is to fill in facts missing from the original claim." *Id.*

[10] The dissent sidesteps the fact that whether a petition was pleaded with sufficient particularity and whether a subsequent petition relates back to facts set out or attempted to be set out in the original petition are different questions governed by different standards, instead insisting that an original petition's failure to comply with the requirements for filing an adequate habeas petition prevents it from supporting relation back. Dissent at 40. But the inquiries are not so easily merged, because Rule 15 expressly contemplates that inadequately pleaded pleadings may

*Mayle* does not instruct otherwise.  The Court did explain in *Mayle* that, because Habeas Rule 2(c)'s particularity-in-pleading requirement is "more demanding" than Federal Rule of Civil Procedure 8(a)(2)'s notice pleading standard,**[11]** habeas petitioners could not rely on a definition of "conduct, transaction, or occurrence" that was more "capacious" than the definition applied to civil cases.  545 U.S. at 655, 657. But, contrary to the dissent's suggestion, *see* Dissent at 35–36, *Mayle* did not adopt a habeas-specific meaning of Rule 15 that is *less* capacious than the standard civil definition. Rather, relying on Rule 15's application in "run-of-the-mine civil proceedings," *Mayle* simply explained that relation back depends upon there being claims in the amended petition that share a common core of operative facts with

---

support relation back, thereby requiring an analysis of what the pleading set out *or attempted to* set out, including in the habeas context.

**[11]** In light of the Supreme Court's later decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), it is not clear that there remains much practical difference between Habeas Rule 2(c)'s and Federal Rule of Civil Procedure 8(a)(2)'s pleading standards.  *Compare Iqbal*, 556 U.S. at 677–78 (explaining that to survive a motion to dismiss a civil pleading must "state a claim to relief that is plausible on its face" and cannot rely on "labels and conclusions," "'naked assertion[s]' devoid of 'further factual enhancement,'" or "a sheer possibility that a defendant has acted unlawfully" (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557, 570)), *with Mayle*, 545 U.S. at 655 ("In the past, petitions have frequently contained mere conclusions of law, unsupported by any facts. [But] it is the relationship of the facts to the claim asserted that is important." (alteration in original) (quoting Habeas R. 2(c) advisory committee's note to 1976 adoption)), *and id.* ("[T]he petition is expected to state facts that point to a real possibility of constitutional error." (quoting Habeas R. 4 advisory committee's note to 1976 adoption)).

claims in the original habeas petition. 545 U.S. at 657–59.**[12]** The general principle that relation back requires a single course or pattern of conduct—not factually and temporally unrelated conduct arising out of the same underlying proceeding—showed why an entire criminal proceeding was too broad to "delineate an 'occurrence'" for relation back purposes. *Id.* at 661 (quoting Fed. R. Civ. P. 15(c)). Here, Ross identified particular errors that he believes entitle him to habeas relief; nowhere in his original or amended petition did he attempt to rely on his entire trial as the transaction or occurrence at issue.**[13]**

The State next contends that permitting relation back based on attached exhibits would contravene the goals motivating the Habeas Rules' adoption in Rule 2(d) of a standard form for habeas petitions. The Advisory Committee explained that the form was adopted to achieve greater administrative convenience. Prior to adoption of the form, petitions frequently contained "mere conclusions of law, unsupported by any facts," or were "lengthy and often illegible . . . [and] arranged in no logical order." *See* Habeas

---

**[12]** The dissent suggests that applying normal relation back principles in federal habeas cases is "inconsistent with AEDPA." Dissent at 44, 47 n.6. This suggestion cannot be reconciled with the reasoning in *Mayle*, which applied normal relation back principles to determine relation back in a habeas case. If the Supreme Court had believed that allowing relation back defied AEDPA's statute of limitations, it presumably would have just said so instead of engaging in all of the analysis it did in *Mayle*.

**[13]** Indeed, *Mayle* instructs courts to look for "congeries" of facts, 545 U.S. at 661—which the Oxford English Dictionary defines as a "collection of things merely massed or heaped together; a mass, heap," *Oxford English Dictionary* (2d ed. 1989)—thereby illustrating our prior point that relation back looks to the existence of supporting facts and not to how well those facts are pleaded.

R. 2(c) advisory committee's note to 1976 adoption.[14]
Judges who received such submissions "had to spend hours
deciphering them." *Id.*

We disagree with the State that ruling in Ross's favor
here will saddle district courts with the task of sifting
through unmanageably large attachments. As an initial
matter, Ross was obligated to attach the Nevada Supreme
Court decision to his habeas petition,[15] and the Advisory
Committee notes to the 1976 adoption of Habeas Rule 4
explicitly contemplate that district courts will review "any
exhibits attached to the petition, including, but not limited
to, transcripts, sentencing records, and copies of state court
opinions" as part of their ordinary habeas screening
obligations. Accordingly, we see no basis to conclude that,
in general, allowing a petitioner to incorporate facts from
attachments into his petition for relation back purposes will

---

[14] Following the 1976 enactment of the Habeas Rules, subsequent
amendments moved the provision providing for a form petition from
Habeas Rule 2(c) to Habeas Rule 2(d). Accordingly, this note
corresponds to the provision now listed in Habeas Rule 2(d).

[15] Because the form petition required Ross to attach the decision, it
is far from clear that, as the dissent contends, Ross failed to "substantially
follow" the requirements of the form petition. *See* Habeas R. 2(d);
Dissent at 40–42. The form petition purported to allow Ross to attach
only two pages stating supporting facts, but it also included a separate
requirement that he attach a state court order he knew to contain further
supporting facts. Faced with this apparent inconsistency, he might
reasonably have interpreted the form's instructions not to constrain him
from relying on the facts in required attachments.

saddle district courts with a greater volume of documents to review than the Habeas Rules expressly contemplate.**[16]**

Moreover, in determining whether an amended petition relates back, district courts face no obligation to wade unguided through entire exhibits attached to an original petition to determine whether those exhibits contain core facts.  Relation back is decided once there is an amended petition—and an amended petition must itself satisfy the particularity standards of Rule 2(c) in order to avoid dismissal on particularity grounds, separate and apart from timeliness concerns.  The only operative pleading before the court will therefore presumably be one that is particular and not too difficult to navigate.  Moreover, relation back is rarely decided on the pleadings alone; instead, courts typically have the benefit of briefing on a motion to amend or motion to dismiss.  As in this case, such briefing will typically identify the specific portions of an earlier pleading that contain the relevant factual material to which the new pleading is attempting to relate back, avoiding the need for the judge to sift independently through the original petition's exhibits.  If the submissions discussing the amended petition fail to do so, district courts have familiar remedies, such as dismissing the new claim as time-barred for failure to show that it relates back, declining to grant leave to amend for similar reasons, or requesting supplemental briefing to better explain the relationship between the amended petition and

---

**[16]** The dissent at first appears to suggest that treating exhibits as part of a habeas petition would undermine various aspects of habeas rules and procedure, *see* Dissent at 40–42, but it later admits that any documents to which a petition makes "clear . . . reference[]" would be incorporated therein, *see id.* at 47 (alteration in original).  The dissent offers no account of why its concerns about the volume of attachments or compliance with the habeas rules would be ameliorated by the inclusion of words such as "see attached" or "incorporated by reference."

the original one—for example, by identifying the particular facts from an attachment that support each claim for relief.**[17]**

To the extent the State has a separate concern about whether contending with voluminous filings is consistent with Rule 2's particularity-in-pleading standard, the Habeas Rules provide a more direct solution. It is true that some of the requirements of Habeas Rule 2 were motivated by the Advisory Committee's concern that petitioners too frequently filed "lengthy and often illegible petitions" or "mere conclusions of law, unsupported by any facts." *See* Habeas R. 2(c) advisory committee's note to 1976 adoption. But when a petitioner files a petition that is insufficient under the particularity-in-pleading standard, the Advisory Committee Notes instruct that the district court must accept and file the defective petition, and in appropriate circumstances "require the petitioner to submit a corrected petition that conforms to Rule 2(c)." *See* Habeas R. 2(c) advisory committee's note to 2004 amendment. Although an earlier incarnation of Rule 2 had permitted a court to return an insufficient petition to the petitioner without filing it, following the enactment of AEDPA's one-year statute of limitations the Advisory Committee cautioned that rejecting without filing "a petition because it is not in proper form may pose a significant penalty for a petitioner, who may not be able to file another petition within the . . . limitations period." *Id.* Rather than retroactively applying—with

---

**[17]** Contrary to the dissent's view, *see* Dissent at 33–34, our holdings that an attachment to a petition is a part of the petition for all purposes and that only those facts that correspond to a claim asserted in the petition are "set out or attempted to be set out" in that petition are entirely consistent. Background facts set out in an attachment that are unrelated to the original petition's claims may be a part of a petition without necessarily setting out or attempting to set out a transaction or occurrence to which a later amended petition may relate back.

prejudice—the requirements of Rule 2(c) to an original pleading once there is an amended pleading, district courts must accept original petitions in the form they are filed and then enforce Rule 2(c) by requiring petitioners to make any necessary adjustments through the amendment process.**[18]**

These commonsense procedures also dispose of any concern that petitioners could lay the groundwork for an endless host of claims unburdened by the statute of limitations merely by submitting a blank petition and attaching a complete trial record or other voluminous filings. Such a petitioner would have failed to set out any claims in her original petition in the first place, and therefore could not incorporate corresponding facts under the rule we explain here. And the district court would have ample ability to require re-filing to ensure that such a petitioner complied with the particularity-in-pleading requirement.**[19]**

---

**[18]** For example, if, upon "promptly examin[ing]" Ross's original petition, the district court had concern about a deficiency in that petition, the district court could have informed Ross about the deficiency. *See* Habeas R. 4. Had the court done so, Ross could have simply copied the factual background from the state court order into an amended petition. Indeed, there is every reason to believe Ross would have done precisely this given that he had already tried to incorporate that order by reference in support of his claims. If this rote copying had occurred before the statute of limitations had run, there would be no question that Ross's amended petition would not be time barred.

**[19]** Although the reasons given above suffice to require reversal here, we also note that courts are obligated to "liberally construe[]" documents filed *pro se*, like Ross's original petition. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Doing so, it is clear that Ross "attempted to . . . set out" the factual background for the claims in his petition by attaching the Nevada Supreme Court's order to it. Fed. R. Civ. P. 15(c)(1)(B). The obligation to construe *pro se* filings liberally means courts must frequently look to

# III

For the foregoing reasons, claims in Ross's amended petition that share core operative facts in common with those in his original petition relate back to the original petition and should not have been dismissed. But because we do not typically consider in the first instance issues not discussed by the district court, *see Am. President Lines, Ltd. v. Int'l Longshore & Warehouse Union, Alaska Longshore Div., Unit 60*, 721 F.3d 1147, 1157 (9th Cir. 2013), we will not ourselves undertake the full comparison necessary to determine which claims in the amended petition relate back. Rather, we remand for the district court to consider which of the claims in the amended petition (beyond the claim regarding the failure to object to expert testimony, discussed above) are supported by facts incorporated into the original petition.

**REVERSED AND REMANDED.**

---

the contents of a *pro se* filing rather than its form. For example, in *Zichko v. Idaho*, 247 F.3d 1015 (9th Cir. 2001), we concluded that a habeas petitioner had preserved for appeal a particular claim even though facts relating to that claim did not appear in the part of the *pro se* petition in which he labeled and summarized the claim. *Id.* at 1020-21. And in *Woods v. Carey*, 525 F.3d 886 (9th Cir. 2008), we explained that, when a *pro se* petitioner whose habeas petition is pending submits a new petition, the new petition should be construed as a motion to amend the pending petition rather than as a second or successive petition. *Id.* at 888-90; *see also Belgarde v. Montana*, 123 F.3d 1210, 1213 (9th Cir. 1997) (noting that we construe *pro se* petitioners' use of habeas forms "with deference").

IKUTA, Circuit Judge, joined by CALLAHAN and M. SMITH, Circuit Judges, dissenting:

The Federal Rules of Civil Procedure (the Civil Rules) do not automatically apply to habeas proceedings. Instead, the Supreme Court has made clear that courts must first determine whether a Civil Rule is inconsistent with the Habeas Rules or AEDPA, and if so, whether a less expansive reading of the Civil Rule eliminates the conflict. *See Mayle v. Felix*, 545 U.S. 644, 656–64 (2005); *Gonzalez v. Crosby*, 545 U.S. 524, 528–33 (2005). Here, the majority interprets Rule 10(c) in the habeas context to mean that the *facts* contained in "a written instrument that is an exhibit to a" habeas petition are "part of the pleading for all purposes" but only to the extent the facts are arguably related to the petition's grounds for relief. On its face, this interpretation is unworkably broad and complex, saddling district courts with the task of sorting through voluminous attachments to determine which facts correspond to a petition's grounds for relief. In effect, the majority returns us to the gloomy days before the Habeas Rules when judges spent hours deciphering "two thousand pages of irrational, prolix and redundant pleadings." Rule 2, Rules Governing Section 2254 Cases, advisory committee's notes (quoting *Passic v. Michigan*, 98 F. Supp. 1015, 1016 (E.D. Mich. 1951)). Because the majority's interpretation is inconsistent with the Habeas Rules, AEDPA's statute of limitations, and the Supreme Court's guidance on applying Rule 10(c) in this context, *see Dye v. Hofbauer*, 546 U.S. 1, 4 (2005) (per curiam), I dissent.

I

In 2009, Ronald Ross was convicted by a jury of several theft-related offenses. He was sentenced under Nevada's habitual-offender statute, receiving a lifetime term of

imprisonment with eligibility for parole after 20 years.  Ross appealed his conviction and sentence.  The Nevada Supreme Court affirmed.

Ross then filed a pro se petition for post-conviction relief (PCR) in Nevada state court.  He attached to the petition a 22-page handwritten memorandum that set forth the factual bases for his claims in greater detail.  When the form petition asked for "supporting facts," Ross repeatedly referenced his "supporting memorandum."  The state PCR court denied relief, and the Nevada Supreme Court affirmed.

Having exhausted his state-court remedies, Ross filed a timely pro se habeas petition in federal court.  Ross used the court-provided form "Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 By a Person in State Custody." The form instructs a petitioner to "[a]ttach to this petition a copy of all state court written decisions regarding this conviction."  In boldface, the form warns the petitioner:

> **State concisely every ground for which you claim that the state court conviction and/or sentence is unconstitutional. Summarize briefly the facts supporting each ground.  You may attach up to two extra pages stating additional grounds and/or supporting facts.  You must raise in this petition all grounds for relief that relate to this conviction.  Any grounds not raised in this petition will likely be barred from being litigated in a subsequent action.**

The form then leads the petitioner step-by-step to provide the necessary information for each claimed ground for relief. For each alleged ground of relief, the form states, "I allege

that my state court conviction and/or sentence are unconstitutional, in violation of my _____ Amendment right to _____, based on these facts:_____ ." The form then guides the petitioner to explain how this claim was exhausted in state court.

The final page of the form requires a certification as to the truth of the allegations. This page states in boldface, "**DECLARATION UNDER PENALTY OF PERJURY**," and continues:

> I understand that a false statement or answer to any question in this declaration will subject me to penalties of perjury. **I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.**

The petitioner must then sign and date the form.

In his petition, Ross alleged violations of his Fifth Amendment right to due process, his Sixth Amendment right to counsel, and his Fourteenth Amendment right to due process and equal protection. But each time the petition required a statement that the alleged constitutional violation was "based on these facts," Ross provided only the following conclusory allegations:

> Counsel was ineffective for failing to:
>
> 1. Secure a speedy trial
>
> 2. Failed to review evidence and adequately prepare

3.  Failed to file pretrial motions

4.  Failed to argue the prejudice of evidence lost prior to trial

5.  Failed to prepare for jury selection

6.  Failed to prepare for trial

7.  Failed to retain defense experts

8.  Failed to object to the state's use of expert witness.

Ross did not take the opportunity to "attach up to two extra pages stating additional grounds and/or supporting facts." And unlike in state court, where Ross repeatedly referenced a "supporting memorandum," Ross did not indicate that any attached document contained "supporting facts," or even mention any attached document.

Ross did, however, attach several documents to his petition. First, he attached a three-page handwritten affidavit in which he explained that he encountered delays in obtaining a copy of a Nevada Supreme Court ruling on his post-convictions relief claims. Second, he attached a copy of the six-page Nevada Supreme Court ruling, along with a remittitur and the first page of a letter from his attorney regarding the ruling. But Ross's petition made no mention of the Nevada Supreme Court ruling.

AEDPA's one-year statute of limitations, *see* 28 U.S.C. § 2244(d)(1), expired on October 27, 2014, a little over a month after Ross filed his original petition. On June 8, 2015, nearly eight months after the limitations period expired, Ross's newly appointed counsel filed a 27-page petition

styled as a "First Amended Petition for Writ of Habeas Corpus." The new petition raised eleven claims for relief and provided several pages of facts and argument for each of the claims. The state moved to dismiss on the ground that the amended petition was time barred, and the district court granted the motion. This appeal followed.

## II

There is no dispute that Ross filed his amended petition after AEDPA's one-year statute of limitations ran. Maj. at 11. To avoid this time bar, Ross argues that the amended petition "relates back" to the date of the original petition under Rule 15(c)(1) of the Federal Rules of Civil Procedure (the Civil Rules).[1]

There is a fatal flaw with Ross's argument: To relate back, the amended petition must assert "a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1). But as the majority tacitly concedes, *see* Maj. at 9, 12, Ross's original petition contains no well-pleaded factual allegations—indeed, it contains no factual allegations at all. Because the original petition fails to set out any "conduct, transaction, or occurrence," relation back under Rule 15(c)(1) is simply unavailable.

This should be the end of Ross's story. But the majority springs an unexpected twist. According to the majority, the Nevada Supreme Court ruling that is attached to Ross's

---

[1] Rule 15(c)(1) provides: "An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1).

habeas petition must be deemed to be part of the petition under Rule 10(c) of the Civil Rules. Maj. at 14.**[2]** But not the entire ruling; rather, the majority explains, only the facts in the ruling that are related to the original petition's "grounds for relief" are incorporated into the petition. Maj. at 16. If any of the facts in the ruling are "unrelated" to the original petition's grounds for relief, they are effectively stricken from the attachment. Maj. at 16. The majority explains that, after determining which facts are incorporated into the original petition, the district court must then determine whether the claims in the amended petition are "supported by facts in the original petition." Maj. at 17 n.6. The majority "emphasize[s]," however, that the correspondence between the facts incorporated by attachment into the original petition and the new claims need not be that "precise." Maj. at 17 n.6.

It is far from clear what is required under the majority's new rule.

As a threshold matter, the majority is inconsistent. Relying first on the language of Rule 10(c), the majority states that "the original petition consists of the petition itself and any 'written instrument[s]' that are exhibits to the petition" for "all purposes." Maj. at 14. But the majority then skips over the operative language in Rule 10(c)—that the written instrument is "part of the pleading for all purposes"—and instead holds that the original petition includes only *certain* facts set forth in the exhibit—

---

**[2]** Rule 10(c) states: "Adoption by Reference; Exhibits. A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

apparently, those facts that can be used for the relation back of a subsequent amended petition. *See* Maj. at 16. This novel approach of using Rule 15(c) to determine the content of a habeas petition from the vantage point of a later, untimely petition has no support in the Civil or Habeas Rules.

Even if this backwards-looking approach made sense, the majority fails to provide district courts with any guidance on how to determine when the facts in an attached exhibit are related to the "grounds for relief asserted in [a] petition." Maj. at 16. The legal claims listed in the form habeas petition are often broad and vague. Here, for instance, Ross's original petition asserts violations of his Fifth Amendment right to Due Process, his Sixth Amendment right to counsel, and his Fourteenth Amendment right to Due Process and Equal Protection, based on conclusory allegations such as "[c]ounsel was ineffective for failing to . . . prepare for trial." How will a district court determine whether the facts in voluminous attachments, which may include opinions, briefs, and entire trial transcripts, relate to the claim that counsel failed to "prepare for a trial"? The majority does not say. The task may be manageable in this case, where the attachment is a mere six-page judicial opinion. But as the majority implicitly recognizes, a district court must undertake this analysis with respect to any and all attachments to the habeas petition, which could amount to thousands of pages, and the district court must deem any fact in any attachment that even arguably relates to a broad claim to be part of the original petition, at least for purposes of relation back. *See* Maj. at 17 & n.6.

There is a critical problem with such an expansive interpretation and application of Rule 10(c): it is directly

contrary to Supreme Court rulings preventing this sort of application of the Civil Rules in the habeas context.

## III

The Supreme Court has made clear that "habeas corpus is . . . not automatically subject to all rules governing ordinary civil actions." *Schlanger v. Seamans*, 401 U.S. 487, 490 n.4 (1971) (citing *Harris v. Nelson*, 394 U.S. 286 (1969)). Habeas proceedings are "unique," and so "[h]abeas corpus practice in the federal courts has conformed with civil practice only in a general sense." *Harris*, 394 U.S. at 294. From its inception, habeas corpus was "tempered by a due regard for the finality of the judgment of the committing court." *Schneckloth v. Bustamonte*, 412 U.S. 218, 256 (1973) (Powell, J., concurring).

The Court has likewise made clear that a Civil Rule "applies in habeas corpus proceedings under 28 U.S.C. § 2254 only 'to the extent that [it is] not inconsistent with' applicable federal statutory provisions and rules." *Gonzalez*, 545 U.S. at 529 (footnote omitted) (citation omitted). Specifically, Rule 81(a)(4) of the Civil Rules provides that the Civil Rules apply to habeas proceedings only "to the extent that the practice in those proceedings: (A) is not specified in a federal statute [or the Habeas Rules]; and (B) has previously conformed to the practice in civil actions." Fed. R. Civ. P. 81(a)(4). Similarly, Habeas Rule 12 "'permits application of the [Civil Rules] only when it would be appropriate to do so,' and would not be 'inconsistent or inequitable in the overall framework of habeas corpus.'" *Mayle*, 545 U.S. at 654 (quoting Rule 11, Rules Governing Section 2254 Cases, advisory committee's notes (2004)). Moreover, even beyond a "substantive conflict with AEDPA standards," a Civil Rule cannot be

applied if it "could be used to circumvent" habeas-specific procedures. *Gonzalez*, 545 U.S. at 531–32.

In light of the Supreme Court's recognition that courts must "limit the friction" between a Civil Rule and habeas requirements, *id.* at 534, the Court has provided a framework for applying Civil Rules in the habeas context.

First, any interpretation and application of a Civil Rule in the habeas context must be consistent with the corresponding Habeas Rule and the unique nature of habeas proceedings. A court may not adopt an expansive interpretation of a Civil Rule if doing so will interfere with habeas-specific requirements. *See Mayle*, 545 U.S. at 664*; see also Harris*, 394 U.S. at 297 (rejecting a "literal application" of Rule 33, which provides for discovery through interrogatories, to habeas proceedings, because it "would do violence to the efficient and effective administration of" habeas). Thus in *Mayle*, the Court rejected the Ninth Circuit's expansive interpretation of Rule 15(c) as allowing an amended habeas petition to relate back to an original petition merely because both petitions related to the "same trial, conviction, or sentence." 545 U.S. at 662. According to the Court, the Ninth Circuit's interpretation interfered with Habeas Rule 2(c), which required that habeas petitioners plead with particularity. *Id.* at 661. Before applying a Civil Rule in the habeas context, therefore, courts must determine whether doing so is consistent with the corresponding Habeas Rule, and if not, the extent to which the two can be harmonized by applying the Civil Rule "less broadly." *Id.* at 657.

Second, any application of a Civil Rule must be consistent with AEDPA, and AEDPA's goal of "advanc[ing] the finality of criminal convictions." *Id.* at 662. In light of this goal, the Supreme Court held that Rule 60, which

provides for relief from final judgments or orders, applies only narrowly in the habeas context so as to avoid circumventing AEDPA's general prohibition on second or successive petitions. *See Gonzalez*, 545 U.S. at 531–33; *see also Pitchess v. Davis*, 421 U.S. 482, 489–90 (1975) (declining to apply Rule 60 when doing so would be inconsistent with statutory exhaustion requirement). Similarly, courts must be "mindful of Congress' decision to expedite collateral attacks by placing stringent time restrictions on [them]." *Mayle*, 545 U.S. at 657 (citation omitted). Given AEDPA's concerns with "finality" and "federalism," it imposes "a tight time line, a one-year limitation period" on habeas petitions. *Id.* at 662–63. Courts may not apply a Civil Rule to a habeas proceeding in a way that "swallow[s] AEDPA's statute of limitation." *Id.* (quoting *Felix v. Mayle*, 379 F.3d 612, 619 (9th Cir. 2004) (Tallman, J., concurring in part and dissenting in part), *rev'd*, *Mayle v. Felix*, 545 U.S. 644 (2005)). Thus, if applying a Civil Rule in the habeas context would give AEDPA's statute of limitations "slim significance," *id.* at 662, courts should apply the rule "less broadly" to account for AEDPA's policy concerns regarding finality, *id.* at 657.

## IV

The majority makes a fundamental error in adopting an interpretation of the Rule 10(c) and applying it in the habeas context without even considering the Supreme Court's guidance for ensuring consistency with the Habeas Rules, the unique nature of habeas, and AEDPA. Maj. at 15–17. As a result, the majority's interpretation conflicts with all three.

## A

First, the majority's interpretation of Rule 10(c) is inconsistent with the corresponding Habeas Rule and with the proper administration of habeas proceedings. *See Mayle*, 545 U.S. at 661, *Gonzalez*, 545 U.S. at 531–33. The corresponding rule here is Habeas Rule 2, which governs the form of habeas petitions. *See* Rule 2, Rules Governing Section 2254 Cases, advisory committee's notes. Habeas Rule 2 provides that "[t]he petition must: (1) specify all grounds for relief available to the petitioner; (2) state all facts supporting each ground; (3) state the relief requested; (4) be printed, typewritten, or legibly handwritten; and (5) be signed under penalty of perjury . . . ." Rule 2(c), Rules Governing Section 2254 Cases. The petition must also "substantially follow either the form appended to [the Habeas Rules] or a form prescribed by a local district-court rule." Rule 2(d), Rules Governing Section 2254 Cases. The majority's expansive interpretation of Rule 10(c) is contrary to Habeas Rule 2 in three material ways.

First, the majority's interpretation of Rule 10(c) violates the requirement imposed by Habeas Rule 2(c) that the petition specify the grounds for relief and the facts supporting each ground. The Habeas Rules' specificity requirement is one of the unique features of habeas proceedings. *See Mayle*, 545 U.S. at 649. It is distinct from the pleading requirements in the civil context, *see* Fed. R. Civ. P. 8(a)(2), which requires that a complaint merely provide "fair notice of what the plaintiff's claim is and the grounds upon which it rests," *see Mayle*, 545 U.S. at 655 (citation omitted). As explained by the Supreme Court, Habeas Rule 2(c) "is more demanding." *Id.* "It provides that the petition must 'specify all the grounds for relief available to the petitioner' and 'state the facts supporting each

ground.'" *Id.* (quoting Rule 2(c), Rules Governing Section 2254 Cases).

This specificity requirement is necessary to assist courts in fulfilling the Habeas Rules' screening function. Under Habeas Rule 4, courts must "promptly examine" each petition, and dismiss a petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing Section 2254 Cases. This reflects a congressional command, *see* 28 U.S.C. §2243, which makes it "the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer," Rule 4, Rules Governing Section 2254 Cases, advisory committee's notes (citing *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970)).

By departing from Habeas Rule 2(c)'s specificity requirement, the majority's interpretation of Rule 10(c) frustrates this screening function. Under the majority's take on Rule 10(c), a petitioner need not state claims and facts with specificity because the facts recited in any attached document, whether it is a judicial opinion, a brief, or an entire trial transcript, are deemed to be part of the petition so long as the facts are arguably related to the petition's claims for relief. Maj. at 16–17. Because any exhibit can serve as a source of facts, a court cannot perform its screening function without searching through the attachments and speculating as to which facts support which claims. Moreover, the court's screening obligations are vitiated by a petitioner's ability to bring an "amended" petition at any time by relying on facts referenced in attached documents, so long as they are arguably related to the claims in the original petition. Therefore, the majority's interpretation of

Rule 10(c) interferes with "the efficient and effective administration" of habeas. *Harris*, 394 U.S. at 297.

The majority's argument that it can ignore the conflict between its reading of Rule 10(c) and Habeas Rule 2(c) on the ground that "[Habeas] Rule 2(c) sets forth only a pleading requirement" is unavailing. Maj. at 19. As the majority acknowledges, the threshold question in this case is whether the facts in an attachment can be considered part of a habeas petition for purposes of relation back. Maj. at 15. Habeas Rule 2 "describes the requirements of the actual petition, including matters relating to its form, *contents*, *scope*, and sufficiency." Rule 2, Rules Governing Section 2254 Cases, advisory committee's notes (emphasis added). It is precisely because Habeas Rule 2 sets forth a "pleading requirement," Maj. at 19, that it controls to the extent a Civil Rule, such as Rule 10(c), could expand the "contents" or "scope" of a habeas petition beyond that contemplated by Habeas Rule 2, *see* Rule 12, Rules Governing Section 2254 Cases (Civil Rules apply only "to the extent they are not inconsistent" with Habeas Rules). The majority attempts to gloss over the conflict between its application of Rule 10(c) and Habeas Rule 2 by focusing instead on the "generous" language of Rule 15(c)(1)(B), Maj. at 19, but this is merely a straw man. Rule 15(c)(1)(B) does not address the contents of the original habeas petition, and so it has no bearing on the question whether the majority's application of Rule 10(c) to modify the contents of the habeas petition is inconsistent with the requirements of Habeas Rule 2.

Second, the majority's interpretation of Rule 10(c) conflicts with Habeas Rule 2(d)'s requirement that petitioners use a standardized form. The standardized form requirement is a unique feature of habeas, distinguishing habeas petitions from civil complaints. *Compare* Rule 2(d),

Rules Governing Section 2254 Cases *with* Fed. R. Civ. P. 8(a). There are habeas-specific reasons for this rule. Because habeas petitioners are frequently pro se prisoners, *see* 1 Randy Hertz & James S. Liebman, Federal Habeas Corpus Practice & Procedure § 12.2, at 852 (7th ed. 2018), the requirement to use a standardized form was calculated to improve the quality of the habeas petition and to assist judges in identifying meritorious claims, *see* Rule 2, Rules Governing Section 2254 Cases, advisory committee's notes ("Administrative convenience, of benefit to both the court and the petitioner, results from the use of a prescribed form.").**[3]** Before this requirement, petitions "frequently contained mere conclusions of law, unsupported by any facts." *Id.* "In addition, lengthy and often illegible petitions, arranged in no logical order, were submitted to judges who . . . had to spend hours deciphering them." *Id.* The standardized form in this case instructs petitioners that they "may attach up to two extra pages stating additional grounds and/or supporting facts." Limiting petitions to "two extra pages" of additional facts makes sense in light of the concerns that motivated the Habeas Rules. *See* Rule 2, Rules Governing Section 2254 Cases, advisory committee's notes.

The majority's interpretation of Rule 10(c) eliminates the value of this requirement, because it requires courts to deem attached materials part of the petition. Maj. at 14. The

---

**[3]** The majority "note[s] that courts [must] 'liberally construe[]' documents filed pro se." Maj. at 26 n.19. But the form habeas petitions like the one Ross used were designed to assist prisoners filing pro se. *See* Rule 2, Rules Governing Section 2254 Cases, advisory committee's notes. These petitions provide clear, step-by-step instructions in plain English and give prisoners ample guidance for setting out their claims and the facts supporting them. Given these substantial efforts to accommodate pro se filers, there appears to be no basis for further relaxing procedural requirements.

majority does not acknowledge that Ross failed to comply with the form petition. *See* Maj. at 9, 23 n.15. Indeed, the majority casts aside the form petition's instructions and the requirement that a petitioner "substantially follow" the form, Rule 2(d), Rules Governing Section 2254 Cases, by interpreting Rule 10(c) to allow petitioners to attach reams of documents, all of which may contain facts that correspond to the petition's claims for relief, Maj. at 16–17.**[4]** In doing so, the majority strikes a blow to "the efficient and effective administration" of habeas, *Harris*, 394 U.S. at 297, and returns judges to the task of ferreting through thousands of pages of "irrational, prolix and redundant pleadings," Rule 2, Rules Governing Section 2254 Cases, advisory committee's notes (quoting *Passic*, 98 F. Supp. at 1016). This will result in the very thing the Habeas Rules—and form petitions specifically—were designed to prevent: an increased burden on the judicial system and an increase in length, and corresponding decrease in quality, of habeas petitions. *See id.*

Finally, the majority's interpretation of Rule 10(c) renders the Habeas Rules' penalty-of-perjury requirement

---

**[4]** The majority does not go so far as to argue that Ross "substantially follow[ed]" the requirements of the form petition. Maj. at 23 n.15. Instead, the majority argues that Ross might have been confused by the instruction (on page 1) to "[a]ttach to th[e] petition a copy of all state court written decisions regarding this conviction" and the separate instruction (on page 3) that "[y]ou may attach up to two extra pages stating additional grounds and/or supporting facts." There is nothing "apparent[ly] inconsisten[t]" with these instructions, Maj. at 23 n.15, because no reasonable petitioner would think that attaching "all state court written decisions" is the same as "*stating* additional grounds and/or supporting facts," particularly given that these instructions appear in separate sections on separate pages of the form petition. In short, the majority's post-hoc rationalization as to why Ross did not follow the instructions is unsupported by the record and belied by common sense.

meaningless. A petitioner cannot reasonably be considered to have verified the accuracy of factual statements included in hundreds or thousands of pages of documents from a range of sources. *See* Rule 2(c)(5), Rules Governing Section 2254 Cases.[5] By effectively relieving pro se petitioners of the responsibility to verify the accuracy of the facts alleged in a habeas petition, the majority undermines one of the important means of improving the quality of habeas pleadings and better enabling the courts to identify meritorious claims. *See* Rule 2, Rules Governing Section 2254 Cases, advisory committee's notes ("There is a penalty for perjury, and this would seem the most appropriate way to try to discourage it."). Again, this penalty-of-perjury requirement is a unique feature of habeas proceedings, and is based on habeas-specific reasons. *Cf.* Fed. R. Civ. P. 11(a) ("Unless a rule or statute specifically states otherwise, a pleading need not be verified or accompanied by an affidavit.").

The majority does not attempt to address the inconsistency of its interpretation and application of Rule 10(c) with Habeas Rule 2. Instead, the majority directs a court considering a late petition to allow (or solicit) "briefing to better explain the relationship between the amended petition and the original one," and to allow the petitioner the opportunity to identify "the particular facts from an attachment that support each claim for relief." Maj. at 24–25. This approach tacitly concedes there may be no obvious relationship between the original petition and the new one. Indeed, in this very case, where the exhibit is a brief, six-

---

[5] This requirement reflects a congressional command. *See* 28 U.S.C. § 2242 ("Application for a writ of habeas corpus shall be in writing signed and verified by the person for whose relief it is intended or by someone acting in his behalf.").

page ruling, the majority nevertheless declines to "undertake the full comparison necessary to determine which claims in the amended petition relate back." Maj. at 27.

In sum, the majority's interpretation of Rule 10(c) conflicts with Habeas Rule 2 and does so in a way that frustrates the "the efficient and effective administration" of habeas. *Harris*, 394 U.S. at 297. It should be rejected on this ground alone.

B

Second, the majority's interpretation of Rule 10(c) is inconsistent with AEDPA. As *Mayle* explained, we may not apply a Civil Rule in a manner that would "swallow AEDPA's statute of limitation," 545 U.S. at 662 (citation omitted), but rather must respect Congress's decision to put "stringent time restrictions" on collateral attacks, *id.* at 657.

The majority's interpretation and application of Rule 10(c) conflicts with these instructions. If each attachment to a habeas petition can serve as a wellspring of facts to support new claims for relief in a subsequent petition, petitioners will lay the groundwork for a host of claims that will relate back merely by pleading broad, malleable claims for relief and then following the form's instructions to "[a]ttach to this petition a copy of all state court written decisions regarding this conviction." Because a petitioner apparently needs only a colorable argument that facts in an attachment relate to a broad claim in the original petition, any reasonable petitioner will assert broad claims for relief and attach reams of documents to preserve a full panoply of claims that can be revived after AEDPA's limitations period runs. Thus, under the majority's reasoning, a petitioner's amended habeas petition will rarely be barred by AEDPA's statute of limitations. *See* Maj. at 15–17.

The majority does not address the inconsistency between its interpretation of Rule 10(c) and AEDPA. As the majority implicitly acknowledges, an attorney can sidestep AEDPA's statute of limitations merely by explaining how facts buried in hundreds of pages of exhibits relate to the claims for relief in the original petition and then argue that the entirely new claims in the amended petition relate to those facts. Maj. at 15–17. The majority fails to explain how this result can be squared with *Mayle*'s warning that "it would be anomalous" to apply an inappropriately broad reading of a Civil Rule in the habeas context so as to avoid AEDPA's stringent time restrictions. 545 U.S. at 663. Thus, the majority's reading of Rule 10(c) "swallow[s] AEDPA's statute of limitation," *Mayle*, 545 U.S. at 662 (citation omitted), in direct contradiction to the Supreme Court's specific direction in *Mayle*. In applying Rule 10(c) in a way that gives AEDPA's statute of limitations "slim significance," *id.* at 662, the majority disregards "AEDPA's 'finality' and 'federalism' concerns," *id.* at 663.

## C

Rather than tailor its interpretation of Rule 10(c) to be consistent with the Habeas Rules and AEDPA, as required by the Supreme Court, the majority attempts to justify its rejection of this guidance on the ground that the Supreme Court cited and applied Rule 10(c) in *Dye*, 546 U.S. at 4. Maj. at 14. But *Dye* does not support the majority. To the contrary, it demonstrates how Rule 10(c) should be interpreted narrowly to avoid conflicts in the habeas context. *See Dye*, 546 U.S. at 4.

In *Dye v. Hofbauer*, the Sixth Circuit dismissed a state prisoner's habeas petition on the ground that the petitioner failed to exhaust his claim of prosecutorial misconduct in state court. 111 F. App'x 363, 364 (6th Cir. 2004), *rev'd*,

546 U.S. 1 (2005). The Sixth Circuit reasoned that the petitioner's federal habeas petition made only a vague reference to a due process violation; therefore, even if the petitioner had presented an identical claim in his state petition, he had not "fairly presented" a federal constitutional claim to the state court. *Id.* The Supreme Court reversed. Citing Rule 10(c) and Rule 81(a)(2) (which then provided that the Civil Rules apply to habeas proceedings only "to the extent" consistent with the Habeas Rules and historical practice), the Court held that the petitioner had adequately exhausted his claims because the "petition made clear and repeated references to an appended [state-court] brief, which presented [the petitioner's] federal claim with more than sufficient particularity." *Dye*, 546 U.S. at 4. In other words, rather than rely on Rule 10(c)'s broad language that a document attached to a pleading "is a part of the pleading for all purposes," the Court held that only when a habeas petition "ma[kes] clear . . . reference[]" to an attachment, may a court consider the attachment under Rule 10(c) to clarify the allegations in the petition. *Id.*

Contrary to the majority's reading, Maj. at 14, by focusing on the petitioner's "clear and repeated references" to the attachment, *Dye* implicitly rejected the majority's interpretation of Rule 10(c). *Dye*'s narrow application of Rule 10(c) is consistent with the Habeas Rules, the unique nature of habeas proceedings, and AEDPA. The incorporation by reference of an attachment, which itself was sufficiently particular, is consistent with the specificity requirements of Habeas Rule 2(c). *See* Rule 2(c), Rules Governing Section 2254 Cases. A targeted incorporation of specific facts allows the petitioner to comply with the Habeas Rules' penalty-of-perjury requirement, *see* Rule 2(c)(5), Rules Governing Section 2254 Cases, because the petitioner can rationally identify the specific facts verified to

be true. And *Dye*'s narrow interpretation of Rule 10(c) is consistent with AEDPA's statute of limitations, because the incorporation of targeted facts in a specified exhibit does not give a petitioner an unbounded opportunity to later raise a wide range of other claims after AEDPA's one-year limitations period has run. *Cf. Mayle*, 545 U.S. at 662.

V

Applying Rule 10(c) as it was applied in *Dye*, and in a manner consistent with the Supreme Court's framework, the analysis of Ross's challenge is straightforward. Ross's original petition does not make "clear . . . reference[]" to the Nevada Supreme Court ruling attached to his petition. Ross knew how to incorporate an appended document by reference; he did exactly that in his state petition. Because he did not reference the Nevada Supreme Court ruling in his federal habeas petition, it was not incorporated into his petition under Rule 10(c) and *Dye*, 546 U.S. at 4. This means that his original petition failed to set out any "conduct, transaction, or occurrence." Fed. R. Civ. P. 15(c)(1)(B). In the absence of any "congeries of facts," *Mayle*, 545 U.S. at 661, in the original petition, the amended petition could not relate back to a core of operative facts in the original petition. As a result, Ross's amended petition does not relate back to the original petition under Rule 15(c), and the claims in the amended petition are time-barred.[6]

---

[6] Because the proper analysis of Rule 10(c) resolves this case, there is no need to analyze whether Rule 15(c) applies to the amended petition. Nevertheless, any interpretation and application of that rule in the habeas context must also meet the Supreme Court's requirement that an application of the Civil Rules be consistent with the Habeas Rules, habeas procedures, and AEDPA. The majority's broad interpretation of Rule 15(c) as giving courts expansive authority to find "[s]ufficient

\*\*\*

By applying Rule 10(c) to a habeas petition without giving due consideration to the habeas context, the majority violates the Supreme Court's direction for applying the Civil Rules in this context and creates an approach inconsistent with the Habeas Rules and with Congress's intention to impose strict time limits on habeas petitions.  Further, the majority turns its back on the Supreme Court's guidance for applying Rule 10(c) in the habeas context, which makes clear that an exhibit is incorporated into a habeas petition only when the petition makes "clear . . . reference[] to" the exhibit.  *Dye*, 546 U.S. at 4.  The majority's approach is squarely at odds with AEDPA and the Habeas Rules, and it places a substantial burden on the judicial system. Therefore, I dissent.

---

correspondence" between a claim in the amended petition and a "corresponding factual episode" in the original petition, Maj. at 15–16, and the majority's "emphasi[s] that the correspondence need not be as precise" as the example in its opinion, Maj. at 17 n.6, is mistaken, *cf. Mayle*, 545 U.S. at 661 (rejecting Ninth Circuit's "boundless" approach to Rule 15(c) because "[a] miscellany of claims for relief could be raised later rather than sooner and relate back").  Similarly, the majority's reliance on *Dean v. United States*, 278 F.3d 1218, 1222 (11th Cir. 2002) (per curiam), to suggest that an amended petition might relate back to an original petition even if the original petition "provide[s] no factual support at all" is misplaced. Maj. at 19–20 & n.9. This is because *Mayle* (which postdates *Dean*) rejected such a boundless application of Rule 15(c)(1)(B) by holding that "separate *congeries of facts* supporting the grounds for relief . . . delineate an 'occurrence.'"  545 U.S. at 661 (emphasis added).   That is, there is no "conduct, transaction, or occurrence" if there are no "congeries of facts."